THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE SAKALAS<br>on behalf of herself and others<br>similarly situated<br><br>        Plaintiffs,<br>v.<br><br>WILKES-BARRE HOSPITAL CO. et al.,<br><br>        Defendants | 3:11-CV-0546<br>(JUDGE MARIANI) |

## MEMORANDUM OPINION

### I. Introduction

Before the Court are Defendants' Motion for Judgment on the Pleadings (Doc. 12) and Third-Party Defendant Wyoming Valley Nurses Association / Pennsylvania Association of School Nurses and Practitioners Motion to Dismiss (Doc. 24). For the reasons set forth below, the Court will deny Defendants' Motion and grant Third-Party Defendant's Motion.

### II. Factual Allegations and Procedural History

Plaintiff filed a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania alleging that Defendants had failed to pay her overtime wages in violation of the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. CONS. STAT. §§ 333.101 *et seq.* From April 2010 to January 2011, Defendants employed Plaintiff as a Licensed Practical Nurse. ("Compl." Doc. 1, Ex. A, ¶ 11). Under Defendants' overtime policy, Plaintiff and others similarly situated were entitled to overtime under the "8/80 Rule," which provides that

"[o]vertime will be paid at one and one-half times the employee's average hourly rate for hours worked in excess of eight (8) hours in one day or eighty (80) hours in a pay period." (*Id.* at ¶ 10). Defendants allegedly scheduled Plaintiff on a regular basis to work a 32-hour week consisting of four 8-hour work days, followed by a 48-hour week consisting of six 8-hour work days, thereby avoiding the obligation to pay her overtime hours. (*Id.* at ¶ 14). Plaintiff argues that this practice violates the PMWA which calculates overtime worked in a "workweek" as "a period of 7 consecutive days" rather than a period of fourteen days. 34 PA. CODE § 231.42. In addition, Plaintiff brings this action on behalf of others similarly situated as a class action. (Compl. at ¶¶ 15-21).

Defendants removed on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1453, 1711 *et seq.* (Doc. 1). They then moved for judgment on the pleadings (Doc. 12) and served a Third-Party Complaint on Third-Party Defendants Wyoming Valley Nurses Association ("WVNA") and the Pennsylvania Association of School Nurses and Practitioners ("PASNAP") (Doc. 16), who promptly moved to dismiss the Third-Party Complaint. (Doc. 24).

In the Third-Party Complaint, Defendants allege that WVNA/PASNAP[1] "is a labor organization within the meaning of the National Labor Relations Act that acts as the exclusive bargaining representative for all graduate and registered nurses employed by the Hospital." (Doc. 16, ¶ 5). Defendants allege that the 8/80 Rule is contained with the

---

[1] For ease of reference, the Court will refer to Third-Party Defendants as WVNA in the remainder of the opinion.

2

Collective Bargaining Agreement ("CBA") (Doc. 16, Ex. C) which was negotiated between Defendants and WVNA, acting on behalf of the nurses employed by Defendants. (*Id.* at ¶ 6). As such, Defendants allege that WVNA was a knowing and willful participant in the negotiations and to the extent that Defendants are liable under the CBA, WVNA is likewise liable as a joint tortfeasor under the Pennsylvania Uniform Contribution Among Tort-feasors Act ("UCATA"), 42 PA. CONS. STAT. §§ 8321 *et seq.* (*Id.* at ¶¶ 9-17). Among other allegations, the Third Party Complaint contains the following statements:

> 6. The 8/80 Rule at issue in Sakalas' Complaint is made applicable to the Hospital's nurses within the collective bargaining unit represented by WVNA/PASNAP pursuant to, and solely as a result of, a negotiated Collective Bargaining Agreement between WVHCS-Hospital and WVNA/PASNAP, which became effective on October 9, 2005. (Exhibit "C") ("the CBA"). By Memorandum of Agreement dated May 1, 2009, WVNA/PASNAP and WBHC agreed to adopt the terms of the CBA from May 1, 2009 to July 1, 2009 (Exhibit "D"). From July 1, 2009 to April 30, 2011, the individuals represented by WVNA/PASNAP worked under the terms of the then-expired CBA pursuant to the National Labor Relations Act. On April 30, 2011, the parties agreed to a Collective Bargaining Agreement which contains the referenced 8/80 provision.
>
> 7. Article 19 of the CBA addresses the nurses' Hours and Overtime and contains the 8/80 requirement. Specifically, Article 19 states, in relevant part:
>
> Section 2 – Employees may be hired to work on an hourly or salaried basis.
>
> . . .
>
> (c) The normal work day for full-time employees on an 8/80 schedule shall consist of eight (8) hours per day over a fourteen (14) day period.
>
> Section 7 – Employees on an 8/80 schedule shall receive one and onehalf (1 ½) their regular straight time hourly rate for actual hours worked (as defined in

3

> Section 8 below) in excess of eight (8) in any given work day and/or eighty (80) in a given pay period. . . .
>
> 9. WVNA/PASNAP knowingly and willfully participated in, negotiated, ratified, and administered the CBA, the Memorandum of Agreement and the April 30, 2011 Collective Bargaining Agreement, including the referenced 8/80 provision (hereinafter collectively referred to as "the CBA's 8/80 provision").
>
> 10. Upon information and belief, WVNA/PASNAP negotiated, ratified and has administered the April 30, 2011 Collective Bargaining Agreement with knowledge of the lawsuit referenced in paragraph 1.
>
> 11. By participating in, negotiating, ratifying, and administering the CBA's 8/80 provision, WVNA/PASNAP acted in mutual interest with the Hospital in relation to the nurses within its collective bargaining units.
>
> 12. The CBA specifically provides that the parties (i.e. WBHC and WVNA/PASNAP) intend for their "mutual interests" to include "rates of pay, hours of work and conditions of employment." (Exhibit "C").
>
> 13. By participating in, negotiating, ratifying, and administering the CBA's 8/80 provision, WVNA/PASNAP aided and abetted the Hospital in the implementation of the 8/80 Rule at issue in Sakalas' Complaint.
>
> 16. Alternatively, if the Hospital's implementation of the 8/80 Rule at issue in Sakalas' Complaint is found to violate the PMWA, which the Hospital denies, then WVNA/PASNAP has breached its duty not to act arbitrarily with respect to the individuals it represents by participating in, negotiating, ratifying, and administering the CBA's unlawful 8/80 provision.

Meanwhile, Plaintiff filed a motion to certify a class (Doc. 14) which Judge Munley stayed pending the resolution of Defendants' motion for judgment on the pleadings. (Doc. 34). Thereafter, the case was transferred to the undersigned judge. The motion for judgment on the pleadings and the motion to dismiss are fully briefed and are ripe for review.

4

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal,* 129 S. Ct. at 1950. Thus, a complaint must "show" an entitlement for relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Phillips v. Co. of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. At 1949. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler*, 578 F.3d at 210-11.

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). In resolving a motion to dismiss under 12(c), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## IV. Analysis

### a. Defendants' Motion for Judgment on the Pleadings

Defendants' sole asserted basis for their motion is the argument that the PMWA's remedies provision, § 333.113 does not explicitly authorize the recovery of unpaid overtime compensation:

> If any employe is paid by his or her employer less than the <u>minimum wages</u> provided by section 4 of this act[2] or by any regulation issued thereunder, such

---

[2] 43 PA CONS. STAT. § 333.104. For ease of reference and to reduce confusion, for the remainder of the opinion, the Court will refer to the sections of the PMWA by the Section numbers contained within the text of the PMWA itself. For instance, § 333.104 will be referred to as Section 4 and the remedies provision under § 333.113 will be referred to as Section 13.

6

worker may recover in a civil action the full amount of such <u>minimum wage</u> less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between the employer and the worker to work for less than such <u>minimum wage</u> shall be no defense to such action.

(emphasis added). Defendants argue that the drafters of the PMWA took great pains to distinguish "minimum wage" from "overtime" throughout the text of the statute. For instance, in the Declaration of Policy in Section 1, the General Assembly used the term "wages."[3] However, in the remedies provision in Section 13, the term "minimum wage" is used to the exclusion of "wages" and "overtime." For Defendants, this proves the General Assembly's intent of providing for the recovery of only minimum wage and a reasonable attorney's fee. The inclusion of recovery of "minimum wage" and "reasonable attorney's fees" implies the exclusion of all other remedies.[4] *See Williams v. Wynder*, 232 F. App'x 177, 180 (3d Cir. 2007); *Hoy v. Angelone*, 720 A.2d 745, 748 (Pa. 1998). Courts should be wary of expanding remedies provisions of statutes where legislatures have not explicitly provided for them. *See Meghrig v. KFC Western*, 516 U.S. 479, 488, 116 S. Ct. 1251, 134 L.Ed.2d 121 (1996); *Crawford v. Pituch*, 84 A.2d 204, 206 (Pa. 1951).

To further bolster their argument, Defendants point out that in contrast to the PMWA, the Fair Labor Standards Act ("FLSA") and the Wage Payment and Collection Law ("WPCL") explicitly provide for the recovery of both unpaid minimum wages and overtime in their

---

[3] Under the Definitions found in Section 3, "wages" mean "compensation due to any employe[e] by reason of his or her employment." § 333.103(d). Presumably, "wages" is broader than either "minimum wage" or "overtime" and would encompass both terms.

[4] Defendants also analyzed the dictionary definition of "minimum wage" versus "overtime" and concluded that the former did not subsume the latter.

7

remedies provisions. See 29 U.S.C. § 216(b); 43 PA. CONS. STAT. § 260.9a(b).[5] Based on the explicit language of the PMWA, therefore, and a comparison to the FLSA and WPCL, Defendants claim that it is clear that the General Assembly intended to exclude the recovery of unpaid overtime wages from the PMWA.

Yet, Defendants ask this Court to interpret the PMWA in a way that no other court in the 44-year history of the statute has done.[6] While it appears that no court has squarely addressed the issue of whether the PMWA provides for the recovery of overtime wages, in the face of the overwhelming number of cases in which both state and federal courts have recognized a right of action to recover them (see infra), the Court is unwilling to ignore this body of case law to conclude that the Act does not allow overtime wage recovery.

The Court acknowledges the force of Defendants' text-based argument regarding the remedies provisions of Section 13. However, it finds Defendants' focus on that particular portion of the PMWA unduly narrow, inconsistent with the remainder of the Act, and counter to the intent of the General Assembly. Reading Section 13 in isolation *could* lead one to think that only minimum wages are recoverable under the PMWA. However, read in conjunction with the remainder of the statute, the Court concludes the General Assembly intended for employees to recover both minimum wages and overtime. "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and

---

[5] The WPCL authorizes recovery of "unpaid wages," which by definition includes unpaid overtime. *Id.* at § 260.2a.

[6] Tellingly, Defendants have cited no case in which a court held that recovery of overtime wages was barred.

8

context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006). Viewing the statute in its entirety places Section 13 in its proper context.

Section 2 of the statute contains the Short Title of the PMWA, which is the "Minimum Wage Act of 1968."[7] Though the statute is entitled the Minimum Wage Act of 1968, it covers an array of topics other than minimum wage. The caption of the Act states it is:

> An Act Establishing a fixed minimum wage and overtime rates for employe[e]s, with certain exceptions; providing for minimum rates for learners and apprentices; creating a Minimum Wage Advisory Board and defining its powers and duties; conferring powers and imposing duties upon the Department of Labor and Industry; imposing duties on employers; and providing penalties.

Defendants' emphasis on the distinctions between the General Assembly's use of the terms, "wages," "minimum wages," and "overtime" is overstated. Section 3, entitled "Definitions," defines "wages," but not "minimum wage" or "overtime." Yet, the thrust of the statute is clearly aimed at addressing minimum wage, as well as overtime.

Section 13 provides in relevant part: "If any employe is paid . . . less than the minimum wages provided by <u>section 4</u> of this act or by any <u>regulation</u> issued thereunder,

---

[7] Under the statutory tools of interpretation, the Court may consider the Short Title and caption in the construction or interpretation of the statute. 1 PA. CONS. STAT. § 1924 states:

> The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a statute shall be construed to exclude all others. The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.

Thus, the Court rejects Defendants' attempts to downplay the significance attributed by Plaintiff to either the Short Title or caption to the PMWA. Read in conjunction with the rest of the PMWA, the Short Title and caption reflect the General Assembly's intent to address minimum wage standards in the PMWA, as well as supplemental issues, including overtime wages.

such worker may recover in a civil action. . . ." (emphasis added). The Secretary of Labor and Industry is charged with enforcing the Act and making regulations to "carry out the purposes of this act," including "overtime standards." § 333.109; 34 PA. CODE § 231.42 (regulation defining the "workweek" as "7 consecutive days"). "In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, . . . may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; (2) That the General Assembly intends the entire statute to be effective and certain." 1 PA. CONS. STAT. § 1922. It makes little sense to provide for enforcement of overtime standards on employers while simultaneously denying employees the right to recover for violations of those overtime requirements by their employers.

Furthermore, Section 4 (referred to in Section 13), though entitled "Minimum Wages," includes a provision at subsection (c) requiring employers to pay overtime at "not less than one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the secretary." Plaintiff argues that Section 13 incorporates all of Section 4, including 4(c), thereby incorporating overtime into the remedies provision. The Court acknowledges there is tension between Sections 4 and 13, because incorporating Section 4(c) into Section 13 implies that "minimum wage" includes "overtime," which runs counter to the commonly accepted definitions of the two terms.

However, the Court finds that in conjunction with other portions of the PMWA and the amendments made to it over time, there is support for finding that overtime is recoverable

10

under Section 13. Section 13 has not been amended once since the PMWA's enactment,[8] but amendments to other portions of the Act since its inception shed some light on how the Court should construe Section 13 in context. Section 5(b), which lists occupations exempt from overtime requirements, was amended by Act 79 of 1990.[9] Section 3 of Act 79 contained the following provision: "No claim shall be made for <u>overtime wages</u> pursuant to the act to which this is an amendment by an employee of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service . . . ." (emphasis added). The key is that Section 3 recognizes that overtime wages are recoverable for someone other than the employee of a motor carrier.

Again, it would be illogical for the General Assembly to define "overtime" as one-and-a-half times the minimum wage and to charge employers with obeying the overtime standard, but to allow recovery on unpaid minimum wages only. This is an "absurd" and "unreasonable" interpretation of the PMWA, and the Court will not adopt Defendants' proposed interpretation. See 1 PA. CONS. STAT. § 1922.

---

[8] Chronological Table of Statutes: Laws, Decisions and Rules of Court Affect Act 5 of 1968, http://www.legis.state.pa.us/cfdocs/legis/CH/Public/ucons_view_affecting.cfm?sess_yr=1968&sess_ind=0&act_nbr=0005. (last visited July 24, 2012).

[9] Minimum Wage Act, 43 PA. CONS. STAT. § 333.105 (1968), *amended by* Amend Exceptions from Minimum Wage, Pub. L. 348, No. 11 (1990), *available at* http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/1990/0/0079..HTM.

In the meantime, since the Act's inception, dozens of courts have recognized a plaintiff's right to recover overtime wages under the Act.[10] As mentioned before, though nearly every other section of the Act has been amended, repealed, or preempted at some point within its 44-year history, Section 13 has remained undisturbed. Had the General Assembly felt that the courts had been misinterpreting Section 13 of the Act all this time, surely it would have intervened by now.

Finally, the Court agrees with its sister court's rejection of the same argument Defendants advance here. *See Zelinsky v. Staples, Inc.*, No. 08-684, 2008 WL 4425814 (W.D. Pa. Sep. 29, 2008). Though Defendants point out that they are without the benefit of knowing precisely what the defendant in *Zelinksy* argued before Judge Ambrose, she specifically rejected its argument that "no private right of action exists under the Pennsylvania Minimum Wage Act based on an employer's failure to pay overtime." *Id.* at *7. In denying the defendant's motion to dismiss, Judge Ambrose stated, "I further do not read section 13 of the PMWA as precluding a private right of action for unpaid overtime."[11] *Id.*

Thus, the Court concludes that the PMWA does indeed provide employees with a cause of action for the recovery of overtime wages in addition to any unpaid minimum wages.

---

[10] To name only a few, *see, e.g., Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920 (W.D. Pa. 2011) (citing *Turner v. Mercy Health Sys.*, Nos. 3670, 5155, 2010 WL 6761223 (Pa. Com. Pl. Mar. 10, 2010)); *Caucci v. Prison Health Srvcs., Inc.*, 153 F. Supp. 2d 605 (E.D. Pa. 2001); *Friedrich v. U.S. Computer Srvcs., Inc.*, 833 F. Supp. 470 (E.D. Pa. 1993); *Gusdonovich v. Business Info. Co.*, 705 F. Supp. 262 (W.D. Pa. 1985); *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (Pa. Super. Ct. 2009); *Sanders v. Loomis Armored, Inc.*, 614 A.2d 320 (Pa. Super. Ct. 1992).

[11] She also stated, "Defendant has failed to cite any authority in support of its argument that no private right of action exists to recover unpaid overtime under the PMWA. I note the plethora of cases in Pennsylvania state courts and this district where plaintiffs sought to recover overtime pay under the PMWA." *Id.*

### b. <u>WVNA's Motion to Dismiss</u>

Defendants served a Third-Party Complaint (Doc. 16) on WVNA which construes the document to contain a variety of theories that if Defendants are found liable, (1) they are entitled to indemnification from WVNA, (2) they are entitled to contribution from WVNA, (3) WVNA is individually liable for a breach of the duty of fair representation to its members, or (4) that WVNA must be joined in this matter to afford Plaintiff full relief should she prevail. In Defendants' brief in opposition to WVNA's motion to dismiss, they address only the issue of contribution. As such, the Court will address the contribution theory only.

WVNA argues that Defendants are not entitled to either indemnity or contribution because their claims are preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 185 *et seq.* WVNA contends that Defendants' claims against it are preempted because, unlike Plaintiff's claim against Defendants, which is purportedly based on a violation of state law independent of the CBA, Defendants' claims against WVNA are grounded in the CBA itself. Therefore, any resolution of Defendants' claims against WVNA would have to be determined under federal common law and not the UCATA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) ("when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.") (internal citations omitted); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04, 82 S.

Ct. 571, 7 L. Ed. 2d 593 (1962); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456-57, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957).[12]

Examination of the Third-Party Complaint filed against WVNA confirms that Defendants are attempting to assert rights against WVNA arising out of, and substantially dependent on, an analysis of the CBA.

> 6. The 8/80 Rule at issue in Sakalas' Complaint is made applicable to the Hospital's nurses within the collective bargaining unit represented by WVNA/PASNAP pursuant to, and solely as a result of, a negotiated Collective Bargaining Agreement between WVHCS-Hospital and WVNA/PASNAP, which became effective on October 9, 2005. (Exhibit "C") ("the CBA"). By Memorandum of Agreement dated May 1, 2009, WVNA/PASNAP and WBHC agreed to adopt the terms of the CBA from May 1, 2009 to July 1, 2009 (Exhibit "D"). From July 1, 2009 to April 30, 2011, the individuals represented by WVNA/PASNAP worked under the terms of the then-expired CBA pursuant to the National Labor Relations Act. On April 30, 2011, the parties agreed to a Collective Bargaining Agreement which contains the referenced 8/80 provision.
>
> 7. Article 19 of the CBA addresses the nurses' Hours and Overtime and contains the 8/80 requirement. Specifically, Article 19 states, in relevant part:
>
> 9. WVNA/PASNAP knowingly and willfully participated in, negotiated, ratified, and administered the CBA, the Memorandum of Agreement and the April 30, 2011 Collective Bargaining Agreement, including the referenced 8/80 provision (hereinafter collectively referred to as "the CBA's 8/80 provision").

---

[12] The Supreme Court also stated that

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Id.* at 210-11.

14

> 10. Upon information and belief, WVNA/PASNAP negotiated, ratified and has administered the April 30, 2011 Collective Bargaining Agreement with knowledge of the lawsuit referenced in paragraph 1.
>
> 11. By participating in, negotiating, ratifying, and administering the CBA's 8/80 provision, WVNA/PASNAP acted in mutual interest with the Hospital in relation to the nurses within its collective bargaining units.
>
> 12. The CBA specifically provides that the parties (i.e. WBHC and WVNA/PASNAP) intend for their "mutual interests" to include "rates of pay, hours of work and conditions of employment." (Exhibit "C").
>
> 13. By participating in, negotiating, ratifying, and administering the CBA's 8/80 provision, WVNA/PASNAP aided and abetted the Hospital in the implementation of the 8/80 Rule at issue in Sakalas' Complaint.
>
> 16. Alternatively, if the Hospital's implementation of the 8/80 Rule at issue in Sakalas' Complaint is found to violate the PMWA, which the Hospital denies, then WVNA/PASNAP has breached its duty not to act arbitrarily with respect to the individuals *it represents by participating in, negotiating, ratifying, and administering the CBA's unlawful 8/80 provision.*

(Doc. 16, ¶¶ 6, 9) (internal quotation marks and citations omitted). The Third Party Complaint is replete with references to the CBA and WVNA's alleged liability arising from its negotiations in reaching an agreement with Defendants with respect to the 8/80 provision and its enforcement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988) (holding that application of an employee's retaliatory discharge claim was not preempted by § 301 because her claim against her *employer*, not the union, was based on a state tort claim independent of any interpretation of the CBA).

15

Defendants attempt to attach liability to WVNA by virtue of an alleged breach of the duty of fair representation during the contract negotiations with Defendants. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 77, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991) (holding that unions owe a duty of fair representation during contract negotiations, in addition to during the contract's administration) (citing *Vaca v. Sipes*, 386 U.S. 171, 197-98, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)). However, Defendants do not have standing to assert a breach of the duty of fair representation by WVNA because the duty is owed by the union to *employees*, not the employers. See *Air Line Pilots*, 499 U.S. at 74-75; *Vaca*, 386 U.S. at 177. Only members of the union may assert such a claim, and the underlying Complaint is conspicuously silent as to any actions WVNA may or may not have taken. Therefore, if there were any allegations of a breach of the duty of fair representation, Plaintiff would have had to raise them in her Complaint for the union to be subject to liability.

Alternatively, Defendants' claims are preempted by section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 under the principles of *Garmon* preemption. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board . . . ."); *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999) ("*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates . . . conduct that would be

prohibited as an unfair labor practice under section 8 of the NLRA, the cause of action is preempted."); *Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996) ("[S]tate regulations and causes of action are presumptively preempted if they concern conduct that is *actually or arguably either prohibited or protected by the Act.*") (emphasis in original). Conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA includes a union's failure to "confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder." 29 U.S.C. § 158(d). Defendants' claim that the union knowingly negotiated a provision that would give rise to a PMWA violation is equivalent to a claim of bad faith bargaining. Such an allegation is "conduct that is actually or arguably" in violation of Section 8(d) of the NLRA and is therefore preempted by *Garmon*.

Finally, the Court notes that under the CBA, Article 2 (entitled "Management Rights"), Section 1:

> The Employer retains the exclusive right to . . . make any and all decisions affecting the business, . . . Such prerogatives shall include, but not be limited to, the sole exclusive rights to: . . . determine and schedule when overtime shall be worked; . . .

(Doc. 16, Ex. C, at 4).

Therefore, even were the Court to find there is neither § 301 preemption nor *Garmon* preemption, given that Defendants wielded the sole decision-making power regarding the availability of overtime and enforcement of the 8/80 provision, the Court doubts whether

WVNA could be liable to Defendants for contribution arising out of the manner of Defendants' scheduling of overtime.

In any event, a determination of Defendants' claims against the union would unavoidably turn on an analysis of the CBA's provisions, thus leaving no question that their claims are preempted under *Allis-Chalmers, supra.*

Also, Plaintiff sued Defendants under the PMWA, which assesses liability on employers only. WVNA is not an employer under the PMWA, and therefore, cannot be liable. *See* 43 PA. CONS. STAT. § 333.112. Defendants argue that though WVNA is not an employer under the PMWA, under UCATA, Defendants are entitled to the statutory right of contribution from the Union should liability attach to them because the Union acted jointly with them in drafting the CBA. *See* 42 PA. CONS. STAT. § 8322. For liability to attach to the Union, then, the Court would have to find that a violation of the PMWA gives rise to a statutory tort cause of action. It appears to the Court that no state or federal court has ruled on this discrete issue of whether an alleged violation of the PMWA is in the nature of a tort or a contract/quasi-contract action. Because it finds that Defendants claims against WVNA are preempted, the Court declines to address this particular issue.

## V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion for Judgment on the Pleadings and will grant Third-Party Defendant's Motion to Dismiss. In accordance with Judge Munley's previous Order (Doc. 34), Defendants are directed to file their brief in

opposition to Plaintiff's Motion to Certify Class (Doc. 14) within fourteen (14) days of the date of the attached Order. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge