## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELE SAKALAS** | : | |
| on behalf of herself and others | : | |
| similarly situated | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **3:11-CV-0546** |
| | : | **(JUDGE MARIANI)** |
| **WILKES-BARRE HOSPITAL CO. et al.,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM OPINION

### I.    PROCEDURAL HISTORY

Presently before the Court is Plaintiff's Unopposed Motion for Final Approval of the

Class Action Settlement and the Payment to Class Counsel of Attorney's Fees and Costs

(Doc. 83). The settlement stems from a class action lawsuit alleging "that the method used

by Wilkes-Barre Hospital Company, LLC and Wyoming Valley Heath Care System

(collectively "WBHC") to calculate the overtime pay owed to certain hospital employees

violated the Pennsylvania Minimum Wage Act ("PMWA")." (Pl.'s Mem. of Law in Supp. of

Mot. for Final Approval of Class Action Settlement, Doc. 84, at 1). Specifically, Defendants

utilized an "8/80 Rule" wherein "overtime will be paid at one and one-half times the

employee's average hourly rate for hours worked in excess of (8) hours in one day or eighty

(80) hours in a pay period." (Complaint, Doc. 1-3, at ¶ 10; Answer, Doc. 11, at ¶ 10). While

this method of compensation is permitted under the Fair Labor Standards Act ("FLSA"), the

1

PMWA "requires that employees be compensated for every hour worked in a workweek . . .

and receive overtime compensation 'not less than one and one-half times' the employee's

regular pay rate for all hours worked over 40 in a workweek." (Doc. 84, at 1-2) (citing 43

P.S. § 333.104).

On July 5, 2012, Pennsylvania House Bill 1820 was signed into law, thereby

amending the PMWA to allow hospitals, such as WBHC, to utilize the 8/80 method.

Therefore, Plaintiff's lawsuit is limited in scope to the time period between February 11,

2008, and July 5, 2012.

Plaintiff filed her Complaint on February 10, 2011 in the Court of Common Pleas,

Luzerne County, PA. (Doc. 1). Defendants subsequently removed the lawsuit to federal

court. In April 2013, this Court approved the following definition of the certified class:

> All individuals employed by WBHC in Pennsylvania during any time between
> February 11, 2008 and July 5, 2012 ("the Relevant Time Period") who: (1)
> during any workweek within the Relevant Time Period, was subjected to
> WBHC's practice of awarding overtime premium pay for hours exceeding 80
> in a 14-day period or exceeding 8 in a 24-hour period and (2) would have
> received a greater total of overtime premium pay for the aggregate of all such
> workweeks if WBHC had awarded him/her overtime premium pay for all hours
> worked over 40 in a 7 day work week.

(Stip. In Lieu of Opp. to Pl.'s Mot. for Class Cert., Doc. 60, at ¶ 7). As such, the parties

identified 583 class members, and, relying on an analysis by PricewaterhouseCoopers LLP

("PwC") determined that these members' alleged unpaid overtime totaled $394,057.89.

(Doc. 84, at 4).

2

The parties subsequently began settlement negotiations in Fall, 2013. (Doc. 84, at

4). In November, 2013, Magistrate Judge Thomas Blewitt presided over a settlement

conference between the parties, wherein a settlement agreement was reached requiring

WBHC to pay a total of $475, 000.00. (Doc. 84, at 5). According to the Settlement

Agreement presently under review, the settlement amount will be distributed as follows:

> A.  $20,000.00 will be set aside and retained by the Administrator to
> compensate itself for all fees, costs, and expenses associated with the
> administration of this Settlement. . . .
>
> B.  . . . [U]p to $ 171,500.00 to Class Counsel for any Court-approved
> attorney's fees, costs, and expenses. . . .
>
> C. . . . [U]p to $7,500.00 to [Plaintiff] Sakalas for any Court-approved
> enhancement award. . . .
>
> D. . . . [U]p to $276,000.00 (representing the total of all Payout Amounts) to
> the Participating Class Members. . . .

(Class Action Settlement and Release, Doc. 83-1, at 4-5). Any residual funds after all class

compensation, fees, and expenses have been paid will be contributed to the Pennsylvania

Interest on Lawyers' Trust Accounts ("IOLTA") Board and no portion will revert back to

WBHC. (Settlement Agreement, at ¶ 8; Doc. 84, at 6).

For the reasons discussed below, the Court finds that the settlement is a fair,

reasonable, and adequate resolution. Therefore, the Court will approve the settlement in its

totality.

## II.    SETTLEMENT APPROVAL

"A class action [whose settlement will bind class members] may not be settled under

[Federal Rule of Civil Procedure] 23(e) without a determination by the district court that the

proposed settlement is 'fair, reasonable and adequate.'" *In re Warfarin Sodium Antitrust*

*Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel*

*Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* FED. R. CIV. P.

23(e)(2).

The Third Circuit "has identified nine factors to be considered when determining

whether a proposed class action settlement is fair, reasonable and adequate." *In re*

*Warfarin*, 391 F.3d at 534. These factors are laid out in *Girsh v. Jepson*, 521 F.2d 153 (3d

Cir. 1975), as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing liability; (5)
> the risks of establishing damages; (6) the risks of maintaining the class action
> through the trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in light of
> the best possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974) (internal quotations and alterations omitted)). As the Court will now discuss, the large

majority of the *Girsh* factors weigh in favor of settlement approval.

4

## 1. Complexity, Expense, and Likely Duration of Litigation

The litigation in this case would be complex, expensive, and protracted. Ongoing proceedings in this case would require the Court to address an issue of first impression in the Pennsylvania federal courts, specifically, whether the 8/80 overtime calculation method was permitted under the PMWA prior to July 2012, as asserted by Defendants. (Doc. 84, at 9). Regardless of this Court's decision, this issue would be appealed to the Third Circuit. Defendants also previously stated their intention to appeal the Court's August 2012 ruling that the PMWA permits employees to bring private civil actions seeking unpaid overtime premium compensation (see Doc. 36). Consequently, the present settlement agreement will save both parties from expending a significant amount of further time and expense in litigation.

Moreover, as a result of this settlement agreement, class members will receive $276,000.00 of the $394,057.89 in alleged unpaid overtime wages. This amounts to 70% of the total amount and is possibly more than the members would receive if the litigation were to proceed to trial, even if a court awarded them the full $394,057.89, after attorney's fees and court costs were paid.

This factor, then, weighs in favor of approval.

## 2. Reaction of the Class to Settlement

Notice of the settlement was mailed to each class member and each notice form was individualized to reflect the specific settlement payout amount to that particular person.

5

(Doc. 84, at 7). The notice form also informed the class members how to object to the settlement. (*Id.*). However, no member has objected, and only two class members have excluded themselves from the settlement. (*Id.*). Therefore, this manifest lack of objection to the settlement weighs heavily in favor of approval.

### 3. Stage of Proceedings and Amount of Discovery Completed

This case has already proceeded through extensive discovery and settlement discussions, as well as almost a full day of mediation. (Doc. 84, at 4-5, 10). Furthermore, prior to settlement discussions, the parties retained PwC and obtained an analysis report by the company detailing each class member's specific alleged unpaid overtime amount. At this stage of this litigation, the parties assert that "the respective lawyers [are] well-versed in the strengths and weaknesses of Plaintiff's fundamental argument." (*Id.* at 11). These facts indicate that each party had sufficient information to come to an informed settlement agreement and appreciate the merits of this case prior to negotiating the proposed settlement, thereby weighing in favor of approval of this factor.

### 4. Risks of Establishing Liability

Absent settlement, Plaintiffs faced several risks of establishing liability. At the outset, there are the inherent risks and uncertainties that any plaintiff faces in litigating a case all the way through trial and appeals. Defendants could also have prevailed in three other ways, specifically by:

> (i) convincing the Third Circuit to reverse this Court's August 2012 holding
> that the PMWA permits civil actions for unpaid overtime; (ii) convincing this

6

Court that the July 5, 2012 amendment to the PMWA applies retroactively; and (iii) convincing this Court that the PMWA (like the FLSA) always has permitted the 8-80 method.

(Doc. 84, at 12). While Plaintiff believes she could defeat these claims, they still raise serious obstacles to establishing liability. Though the Court expresses no opinion as to the merits of these defenses, it is clear that they impose a level of risk in establishing liability that weighs in favor of this settlement.

## 5. Risks of Establishing Damages

Given that establishing liability in this case may require overcoming certain obstacles, it follows that obtaining damages, which can only be assessed after establishing liability, may also prove problematic. The same arguments that risk precluding liability may likewise result in no, or reduced, damages. Here, class members will receive 70% of the $394, 057.89 in total unpaid overtime wages. The Court agrees with Plaintiff that this percentage of recovery "compares favorably to recoveries achieved and approved in other 8-80 class action settlements." (Doc. 84, at 11-12). Therefore, a 70% recovery is reasonable and fair and this factor weighs in favor of settlement.

## 6. Risks of Maintaining Class Action throughout Trial

"There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). Here, this action is at little risk of decertification, and Plaintiff admits that this factor does not favor approval,

7

but argues that this "should not significantly impact the Court's analysis." (Doc. 84, at 13).

Indeed, the Third Circuit has stated that the "examination of this factor in the standard class

action would appear to be perfunctory." *In re Prudential*, 148 F.3d at 321. Therefore, while

this factor may only minimally favor approval due to a slight chance of decertification, it is of

little consequence given the significant weight of many of the other factors in favor of the

settlement.

### 7. Ability of Defendants to Withstand a Greater Judgment

In this case, the parties agree that WBHS could withstand a greater judgment. (Doc.

84, at 13). Consequently, this factor weighs against approval of the settlement.

### 8. Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery

Plaintiff's recovery is $276,000.00 under the settlement agreement from an

estimated $394,057.89 in most likely recoverable damages at trial. As previously

discussed, this equates to a 70% recovery of the class members' alleged unpaid overtime.

Settling for a sizable share of the total likely damages represents a respectable victory for

the class members and therefore favors approval of settlement.

### 9. Range of Reasonableness of Settlement Fund in Light of All Attendant Risks of Litigation

This final factor weighs in favor of approval for all the reasons discussed above.

Litigation in this matter would have been costly and protracted. It would also involve at least

three independent litigation risks, cross-motions for summary judgment, as well as an

8

appeal to the Third Circuit. In light of this, a total settlement of $475, 000.00, of which

$276,000.00 will be paid to the class members, is certainly reasonable and represents an

equitable result for the Plaintiff.

## III. ENHANCEMENT AWARD TO THE ORIGINATING PLAINTIFF

Class Counsel requests that a $7,500.00 award be given to Michele Sakalas, the

Originating Plaintiff. (Doc. 84, at 23).

> Factors to consider when assessing incentive awards are: (a) the risk to the
> plaintiff in commencing suit, both financially and otherwise; (b) the notoriety
> and/or personal difficulties encountered by the representative plaintiff; (c) the
> extent of the plaintiff's personal involvement in the suit in terms of discovery
> responsibilities and/or testimony at depositions or trial; (d) the duration of the
> litigation; and (e) the plaintiff's personal benefit (or lack thereof) purely in his
> capacity as a member of the class.

Godshall v. Franklin Mint Co., 2004 WL 2745890, at *6 (E.D. Pa. 2004) (citing In re Plastic

Tableware Antitrust Litig., 1995 WL 723175, at *2 (E.D. Pa. 1995)). This is not a formal test,

but merely represents some of "the reasons courts cite for approving such awards." In re

U.S. Bioscience Sec. Litig., 155 F.R.D. 116, 121 (E.D. Pa. 1994).

The Sakalas award is included in the proposed Settlement Agreement. (Doc.83-1, ¶

6(C)). According to Plaintiff's Unopposed Motion for Final Approval of the Class Action

Settlement, Sakalas provided assistance to counsel and to the class for over three years by

"actively participat[ing] in this litigation, including attending meetings, providing Class

Counsel with information, and participating in the settlement conference." (Doc. 84, at 23).

9

Class Counsel further stated during this Court's hearing that Sakalas has also been named in local news stories relating to this case.

The class action itself clearly brought benefits to the class members, and it is likely that the Originating Plaintiff's assistance helped counsel prepare, investigate, and litigate this matter. For her ongoing participation and assistance, Sakalas does deserve a reasonable award. The Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of her cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit. See, e.g., Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. 2013).

## IV.    ATTORNEYS' FEES

Class Counsel also seeks attorneys' fees and reimbursement for costs and expenses. The Settlement Agreement provides that "the Administrator will distribute up to $171,500.00 to Class Counsel for any Court-approved attorney's fees, costs, and expenses." (Doc. 83-1, at ¶ 6(B)). This figure accounts for approximately 27% of the common fund and is comprised of $43,108.32 in out-of-pocket expenses and $128,391.68 in attorney's fees. (Doc. 84, at 15).

Structuring attorneys' fees via this "percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a

manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp.*

*Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential*, 148 F.3d at 333.

The Third Circuit has held that a "district court should consider seven factors when

analyzing a fee award in a common fund case." *In re Rite Aid*, 396 F.3d at 301. These

factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency
> of the attorneys involved; (4) the complexity and duration of the litigation; (5)
> the risk of nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). "The

factors listed above need not be applied in a formulaic way. Each case is different, and in

certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1. As

discussed below, each of the factors weighs in favor of approval in the present case.

## 1. Size of the Fund and Number of Persons Benefitted

The settlement will result in class members recovering 70% of the $394,057.89 in

the settlement fund, and will be distributed to 581 of the 583 class members. As previously

discussed, this percentage of recovery "compares favorably to recoveries achieved and

approved in other 8-80 class action settlements", and the class members would only

potentially gain an additional $118,217.00 in unpaid overtime if litigation were to continue.

(Doc. 84, at 10, 11-12). Consequently, the large number of people benefited, in addition to

the high percentage of recovery, weighs in favor of approval.

11

## 2. Absence of Substantial Objections by Members of the Class

As discussed above, not a single class member has objected to this settlement and only two class members have opted out. (Doc. 84, at 17). Accordingly, this factor weighs heavily in favor of approval.

## 3. Skill and Efficiency of the Attorneys Involved

As to the skill and efficiency of the attorneys involved, Class Counsel successfully litigated Defendants' Rule 12(c) motion; obtained class certification; participated with Defendants in jointly retaining and working with PwC; represented the class members during settlement discussions and the settlement conference with Judge Blewitt; negotiated and drafted the class action settlement agreement and notice forms; as well as obtained preliminary approval of, and oversaw, the notice process. Further, class counsel did a thorough job in identifying potential class members, notifying individual class members of their potential recovery, and ultimately negotiating a reasonable settlement that adequately compensates the class. Accordingly, this factor weighs in favor of approval.

## 4. Complexity and Duration of Litigation

This case involves several potentially complex legal questions, including an issue of first impression in the Pennsylvania federal courts as to whether the PMWA permitted use of the 8/80 overtime calculation method prior to July 2012. Counsel would also have to further litigate the issue of whether the PMWA permits employees to bring private civil actions seeking unpaid overtime premium compensation.

12

The case has been actively litigated for over three years, requiring both parties to complete discovery and subsequently undergo settlement discussions and ultimately a settlement conference wherein the present agreement was reached. Consequently, the time dedicated to this lawsuit, in conjunction with the legal issues in dispute, weigh in favor of approving this factor.

### 5. Risk of Nonpayment

Class Counsel represent that they undertook "this case on a pure contingency basis" and invested $40,000 in the PwC analysis prior to any settlement agreement. (Doc. 84, at 19). As in all similar cases, the potential for settlement to not occur at all—or to only occur after years of expensive and time-consuming litigation—is a risk that class counsel assumed when they decided to take this case. Counsel's investment, both in time and money, demonstrates a commitment to this case. Accordingly, this factor weighs in favor of approval.

### 6. Amount of Time Devoted to the Case by Class Counsel

Class Counsel state that Winebrake & Santillo, LLC ("W&S") invested 288.3 attorney hours in this litigation and that Dougherty Leventhal & Price, LLP invested an additional 30 hours at minimum. (Doc. 84, at 19). Because Class Counsel incurred $43,108.32 in out-of-pocket expenses, they now stand to recover 27% of the settlement fund (or $128,391.68). This amounts to an hourly rate of approximately $403.36. In light of the complexity and

duration of this case, the time expended in reaching a satisfactory settlement appears reasonable. Consequently, this factor also weighs in favor of settlement.

### 7. Awards in Similar Cases

As stated immediately above, Class Counsel seeks a fee representing 27% of the total settlement fund. Counsel's request is consistent with this Court's prior decisions in similar cases as well as with comparable cases throughout the Third Circuit. *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at \*6 (M.D. Pa. 2013); *see also Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472, at \*5 (M.D. Pa. 2008) (collecting cases). Accordingly, this final factor weighs in favor of approval as well.

### 8. Lodestar Cross-Check

Even after analyzing the above factors, the Third Circuit suggests that "it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid*, 396 F.3d at 305 (citing *In re Prudential*, 148 F.3d at 333). "The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *Id.*

In this case, class counsel from W&S testify that their total fee lodestar is $144,312.50, based on 288.3 attorney hours. (Declaration of Peter Winebrake, Doc. 83-3,

14

at ¶ 25). This results in an aggregate lodestar hourly billing rate of $500.56. The settlement agreement of $475,000.00 gives a lodestar multiplier of 3.29.

The Third Circuit has stated "that multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Prudential,* 148 F.3d at 341 (internal citation omitted). Nonetheless, while all of the reasons previously discussed above, including the time expended on this case, the experience of the attorneys, and the quality of work, justify Class Counsel's requested fees, significantly, the total lodestar of $144,312.50 is actually greater than Class Counsel's requested fee of $128,391.68, further justifying approval of counsel's proposed fee.

## V.   EXPENSES

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp.2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

Here, in addition to attorneys' fees, counsel requests $43,108.32 as reimbursement for "out-of-pocket expenditures," $40,000.00 of which accounts for Class Counsel's payment to PwC for the company's analysis of WBHC's pertinent timekeeping and payroll data. (Doc. 84, at 4, 23; Winebrake Dcl., Doc. 83-3, at ¶ 26). Counsel has represented to this Court that such a fee is comparable to that for reports of a similar nature and depth. Further, the report by PwC was essential to the litigation, allowing counsel to identify both

the appropriate class members as well as the alleged total unpaid overtime. Additionally,

$3,108.32 in other out-of-pocket expenses accumulated over a three year time period is a

minimal and reasonable amount. Therefore, the Court finds that these fees were

reasonably and appropriately incurred in the course of litigation.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff's Unopposed Motion for Final Approval of

the Class Action Settlement and the Payment to Class Counsel of Attorney's Fees and

Costs (Doc. 83) is **GRANTED**. A separate Order follows.


Robert D. Mariani
United States District Judge